and we will hear from Mr. Gallagher from the public defendant. Philip Gallagher for Francisco Javier Castro-Alfonso. May it please the court. In this case, the district court reversibly erred in holding that Tennessee aggravated burglary is equivalent to burglary of a dwelling for the crime of violence enhancement at 2L1.2. In this court, in several decisions, the court's made clear that burglary of a dwelling is a structure used for living as well as those attached structures. The court has said this in Gomez-Guerra when addressing the scope of the Florida burglary statute. The court there said that burglary of a dwelling doesn't extend to the grounds around the dwelling, but requires unlawful entry into or remaining in the dwelling itself. And again, a few years later, in Martinez-Garcia, addressing the scope of the Georgia burglary statute. The court again said a dwelling is a house or other structure in which a person lives. And then in Albornoz, addressing the scope of the New York burglary statute. The court held that indeed the New York statute is equivalent to burglary of a dwelling, because while it extends past the areas used for living, it's only to those attached areas. And when talking about the importance of the fact that the areas are attached to the living area, the court discussed the Model Penal Code, the Lefebvre Treatise, as well as its own precedents. In all those cases, the court has made clear that dwelling for these purposes is living spaces, whether a formal structure or not, as well as attached structures. The court has never held that it applies to unattached structures not used for living. The Garcia-Mendez case addressing the Texas burglary statute does not address this. The court, in explaining its decision in Garcia-Mendez, recited the argument of the defendants that indeed the Texas burglary statute was overbroad for these similar reasons. But the court didn't evaluate whether or not that argument was correct or rejected. The court's reasoning was solely that the argument was raised on plain error and that the court had held 10 years earlier in Hornsby that Texas burglary was in fact a crime of violence. And so, therefore, the court never reached the arguments raised by the defendants in that case. It just held any error was not plain and affirmed the decision of the district court. Moreover, as noted, Garcia-Mendez is related to Texas burglary, not Tennessee burglary. Why wouldn't the Texas statute require intent to commit a felony? The generic crime entitlement says intent to commit a felony is an element of generic definition of burglary. And here, the defendant was convicted of aggravated burglary, which is defined in a statute that refers to four different kinds of burglary, three of which don't require intent. Why didn't that just settle it? It's overbroad and that's the end of it. It's not a crime of violence. And if the Texas case does not control it. I mean, I may be wrong. Well, if you identified an argument. Obviously, I did not raise that argument in my briefs, which I will confess to, Your Honor. Well, I think he was, I think he was, I think as I saw the statutes, Your Honor, he was convicted under subdivision A-1, indictment followed A-1, that someone enters a building. Oh, no, that would be other than a habit. Well, that person commits burglary. As I understood the crime of conviction, I mean, it was assault. I mean, it was aggravated under 403. Correct. 403 says that aggravated burglary is whatever 402 says. And 402 says about four different things, some of which do not require intent. So if he's convicted under 403, how do we know which one he was convicted off of the crime of conviction? What is the crime of conviction here? The crime of conviction, and I think the. It's 402, right? Right, right. As you say, you go from 403 to 402, as you say, Your Honor. What does 402 say? 402, indeed, is who goes in without, into a building or remains concealed or something like that, and attempts to commit or does have the intent to commit a felony theft or assault. And I believe, actually, this. 402 just said any of the above. Maybe I'm wrong about that. Yeah, I don't. I'm sorry, Your Honor. I'm looking at the burglary side. That's 402, as you're saying. And 402, I'm talking about. Yeah, but what does 403 say? Right, well, 403 is just what makes it aggravated. That's when you enter a habitation. And so, as you say, aggravated burglary is burglary of a habitation as defined in 401 and 402. And then, so, then you're going over to 402, as you're suggesting, Your Honor. Which includes a bunch of things. Right. And then 402, someone has to, well, the intent, you either have to have an intent to commit a felony theft or assault. Or? Or attempt to commit a felony theft or assault. I think that's the mens rea for all four of those alternatives, Your Honor. It is? That's the statute. You may be right. I'm just looking. I'm not. If there's a particular subsection, I should be looking at it. But I believe it's the intent to commit a felony theft or assault, or attempting to commit a felony theft or assault, which would imply such mens rea. And that's why I hadn't raised that argument. Mr. Gallagher, subsequent to your filing your brief in February of this year, the Supreme Court came down with the Mathis opinion. And just very succinctly, tell us why you think Mathis decides the issue of divisibility of this statute 402. Okay. Well, the Sixth Circuit case that I had relied most heavily on my brief, Lara had held that Tennessee aggravated burglary is divisible past the word habitation, the defined word in the statute, to look at what actually was the structure burgled. And in this case, there is evidence the government presented that the structure involved a home. Mathis, after Lara, the Tennessee Sixth, I'm sorry, the Sixth Circuit, applied Lara and Ogier, a published decision, to in fact divide down past the word habitation to find that the person there had also similarly burgled a structure and so therefore had committed a crime of violence under 201.2. Ogier has been repudiated by the Supreme Court in Mathis. It was identified in Mathis as falling on the wrong side of the circuit split resolved in that case. And so Mathis and also Ogier itself had relied upon the Eighth Circuit decision in Mathis, which has obviously now been overruled. And what Mathis says is that we need to look to state law to determine whether something is an element or a means. And so now we need to figure out whether the word habitation, whether going down past that word habitation under Tennessee law is an element. So whether someone entered a house as opposed to an outhouse is an element. And under Tennessee law, it's clear that it is an element for, I'm sorry, you can't go down past habitation. Anything past that's not an element. And that's because, one, as I said, the Tennessee jury instructions make that clear. They require the jury to find that someone entered a habitation, not a particular type of structure. Mathis also suggests looking at indictment for information about how a state applies its laws. And the indictment in this case in the record alleges that Mr. Castro-Alfonso and the co-defendant burgled a habitation, not a particular type of structure. And, again, it's that habitation that has an overbroad definition. And also I cited in my case the Soller case, the intermediate Tennessee case, which says that all the state needs to do to prove aggravated burglary is that someone entered a habitation with the intent to commit a felony theft or assault. So, again, there's no suggestion in the jury instructions, the indictment, or the Tennessee case Soller, that the jury needs to agree upon anything past that the defendant entered a habitation to convict someone of aggravated burglary. Before you've got a little less than five minutes left, I want to turn to Harmless Era. You filed several 28Js letters with us. This one was on April 21, 2016, citing us to United States v. Martinez-Romero as support for your claiming that this was not Harmless Era because the district judge didn't engage in certain steps. But reading the transcript of the sentencing hearing, the district judge, for example, says, I'm very concerned about your criminal history. It's an ongoing criminal history for quite some time. The PSR had urged the judge to consider an upward departure. The judge later says, and he goes over some of his history, and then he says, I'm going to sentence you at the low end of a term of 46 months. I've considered all the 3553 factors, but if I'm wrong, I'm going to impose the same sentence, noting that it's reflected in the transcript itself. The offense was one that involved burglary of a built dwelling. So the court would impose the same sentence, even if it is an error in the enhancement here. So why wouldn't this be Harmless Era? What little minuscule step do you think the district judge missed that would keep this from being Harmless Era, where he had considered all the 3553A factors, he was urged to consider an upward departure, and he said, if I'm wrong, this is the correct sentence for you because of your criminal history. As Martinez, one, I think this case is essentially on all fours with Martinez-Romero, because similar statements, almost identical statements were made by the district judge there. Well, I disagree with you, but go ahead and tell me, what little step did he miss? There are two important factors. One, the district court in this case did not consider the correct guidelines range of 18 to 24 months, which is what. So he's supposed to say on the record, if I'm wrong, your sentence would be 18 to 24 months. Is that what he's required to do? I think whether or not he's required, I think there is, and I'll say this, in other cases this court has looked to the record to see whether there's evidence of such consideration, such as in the PSR addendum or perhaps in the objections, and that is absent here. There has to be, however it comes, whether it's an oral statement or perhaps in writing, I'm not suggesting that it has to take a particular talismanic format, but yes, I do think to be harmless, there has to be evidence that the judge considered the correct guidelines range, Your Honor, and that is absent in this case, as it was absent in Martinez-Romero. The other thing is, as Martinez-Romero makes clear, it's the government's burden to show that the sentence was not influenced in any way by the erroneous guidelines calculation. That's the court's words in Martinez-Romero. And there, this court held that the court's decision in reference to imposing a sentence at the low end of the guidelines was a strong indication that the erroneous guidelines range had affected the sentence imposed by the district court. And again, that's what the district court did here. In selecting that 46-month sentence, the district court referred to it as a low-end sentence, giving further reason to think that it was the erroneous guidelines range that pointed the judge to that point. And the court in Martinez-Romero said it would be remarkable serendipity to presume that imposing a sentence at the low end, the judge wasn't influenced by the erroneous guidelines range. And the same is true here, that by imposing that sentence, the court was influenced by the erroneous range and the error wasn't harmless. And in Martinez-Romero, the court accepted, this court accepted, that the district court on remand might well choose to impose a sentence above the guidelines. The district court might do so here. But more needs to be shown. It's that the ultimate sentence would be the same and that the erroneous range didn't affect the selection of that sentence. And it did in this case, Your Honor. The court's statements, as well as the lack of consideration of the right guidelines range, show that. Finally, in relation to the possibility of an upward departure. In Martinez-Romero, was there a recommendation in the PSR to impose an upward departure? I don't recall, Your Honor. In Martinez-Romero, was there a criminal history as lengthy as the one involved here? It was arguably more severe. Mr. Castro-Alfonso has one felony other than this, which was a burglary of a vehicle. He's never been sentenced to a sentence the next six of a year. There is someone who was involving a kidnapping, had had prior offenses involving against people. Whether it was as lengthy, Mr. Castro-Alfonso does have a lengthy criminal history. But it's mostly, there's one other felony, the burglary of a vehicle. Everything else is misdemeanors, Your Honor. And so, and I think that even the possibility of an upward departure. Mr. Castro-Alfonso was sentenced in criminal history category three. Even if the district court, applying the proper offense level, went all the way up to criminal history category six, that range would not reach 46 months. The high end of that range would be 41 months, I believe, Your Honor. So even with a three criminal history category upward departure, it would not reach the sentence imposed by the district court. So that, even that, the consideration of a possibility of an upward departure is not enough to make it harmless. And like I said, I think in Martinez-Romero, the court accepted the judge might impose an upward departure on remand. But that still doesn't make the error harmless. Here, the court considered the wrong guidelines range, referenced the guidelines range in choosing a sentence at the low end of the guidelines range. That judge was plainly influenced by this range. And so, therefore, under Martinez-Romero, this court cannot, I mean, sorry, the government cannot meet its burden of showing that the error was harmless. So for these reasons, Your Honor, I urge the court, Your Honors, I urge the court to vacate the sentence of Mr. Castro-Alfonso and remand for resentencing. I'm not going to rebuttal. I want you to take a look at this statute 402 and three under 402, which says, enters a building and commits or attempts to commit a felony, theft or assault. In other words, he doesn't enter with intent, but commits it after he's in there. Just take a look at that. Yes, sir, I will. Thank you, Your Honor. Okay. We'll hear now from the government. Ms. Haddon. Ms. Haddon. Your Honors, with regards to the model I have. Ms. Haddon, just as a question of procedure, we've had all of these 28-J letters filed by the defendant, I think three of them, and I don't believe the government responded to any of them. Is that just your normal procedure in your office that you don't respond to 28-J letters? Your Honor, we do respond. I'm sorry. With regards to MAPIS, I could respond right now. No, I'm just curious as to your procedure. Usually we do respond, Your Honor, to the 28-J letters. In this case, we didn't file any supplemental authority to counter what was stated, but I can argue today with regards to certain things. Well, of course. I just was curious because we've had this steady drumbeat of 28-J letters, and they were all relevant to recently decided cases, so it was proper. I was just surprised the government hadn't done more in response. If I could start with the statement with regards to the MAPIS and the modified categorical approach. Your Honor, I think Mr. Gallagher also recognized that in their brief they did acknowledge that the defendant was convicted of the portion of the aggravated burglary statute that is the subsection 1 where he enters with the intent to commit a theft, felony, or assault. That issue is pending now. In other cases, it has not been raised in this case. So the issue in this case is very narrow. It is whether the definition of habitation in the Tennessee statute is divisible. At post MAPIS, there is no authoritative state court decisions that would show that it is divisible. Post MAPIS, it is a single umbrella term when you're talking about the type of structure. And so with regards to whether MAPIS applies or whether the structure or habitation is divisible, the government would concede that now under MAPIS, the definition of structure as it applies to this specific statute is not divisible. But it does not concede whether the form of burglary, whether it's entering unlawful entry with intent to commit a theft, felony, or assault, and the other subsections, I think that's an open issue, and the government's position would be that it is divisible. But we are not arguing that here today. As you started this sort of discussion of what MAPIS covers and doesn't cover, you said there is an issue pending. Were you referring to what Judge Jolly raised with opposing counsel that all of the subsections don't refer to intent? Your Honor, it's pending in other cases. That's what you're saying is pending? Yes, Your Honor. It's not pending in this case. It hasn't been raised in this case. All right. Thank you. So the government's primary argument in this case was, under Garcia-Mendez, that the court did address the specific argument that's being raised here today, and that is whether a structure that is pertinent to or connected with the habitation or the dwelling is broader than the generic meaning of dwelling. And so in that regard, the briefs underlying Garcia-Mendez, the arguments that were raised were identical, and the court did address them. And the decision necessarily found in that case that, and it did state, explicitly stated, that the Texas counterpart is categorically the equivalent of the generic definition of burglary of a dwelling. And the government's position is there has been no unequivocal intervening change in the law since then. It is addressing, for the purposes of this case, an identical provision, the provision that states the phrase that I'm stating, the structure that is pertinent to or connected with. And so Garcia-Mendez has been reaffirmed and approved in later cases. In Gomez-Guerrero, the Fifth Circuit cited Garcia-Mendez with approval, saying that it distinguished the Texas statute, where it voices structures pertinent to and connected with, to curtilage. And citing those cases where curtilage is overbroad, because curtilage involves the grounds. It doesn't involve a structure. It's not something that historically has been a habitation of a dwelling that's used for habitation. So in that regard, and then in Peral Esmota, again, it reaffirmed. For habitation, I mean, what is your argument? Is that the generic crime applies only to dwellings? Your Honor, what is used is a part of the dwelling structures that are pertinent to or connected with the dwelling is generically equivalent, substantially equivalent, to the generic definition of burglary of a dwelling. That's what Garcia-Mendez found, and it's been approved in later cases. Gomez-Barrera, Morales-Mota cited Garcia-Mendez again as precedent, and it did necessarily hold and find the exact issue that we're talking about today with regards to that specific statutory language. And that's the issue here. That's what's been raised, whether the definition of burglary of a dwelling.  I'm sorry, Your Honor? If there is a structure that provides overnight accommodation, is that a dwelling? Yes, Your Honor. Of course. Of course. And that's how it's defined in Texas and Tennessee. I mean, a trailer or anything else. I mean, a dwelling is, you know, where somebody stays at. Yes, Your Honor, and both the Texas and Tennessee statutes define the definition of habitation in that way, and they include things that are connected to or pertinent to that structure, and that would be some, you know, using anything that's intimately involved with the house and your enjoyment of your habitation and your use of the habitation. Well, does it have to be involved with a house? I mean, does a dwelling, I mean, in other words, if somebody stays overnight in a garage, I mean, isn't that it? Yes, Your Honor. Whether it's connected to another larger dwelling or a house or not. That's the government's position, Your Honor, and that is what Garcia-Mendez necessarily had to hold when it found that it categorically is equivalent to the generic dwelling when they addressed the same specific argument. The defense argues that something that's not connected like in a garage is broader than the dwelling, and the government's position is that it is not. It is something closely associated with the use and dwelling, and habitation of the dwelling. And historically has been in Texas cases, it has been applied only in cases that have been either connected with a breezeway, roof, or something, even if it was unattached, was just next to or annexed to the house. And so in Tennessee, it has only been applied to all connected portions or portions of the house. So if you look at the Tennessee cases and how they have applied the Tennessee statute, it's always been applied in a generic way. It's been applied in a way where it's either attached or a part of the house, which is a generic definition which was found in Garcia-Mendez to categorically be the substantial equivalent of the generic definition dwelling, and that's been the government's primary position. We argued Mathis alternatively before Mathis. I'm not Mathis, I'm sorry. We argued that the modified categorical approach applies before Mathis was decided as an alternative argument, but our primary position has always been that Garcia-Mendez is controlling and that this particular statute is not overbroad, that it meets the generic definition of dwelling. We did not reach these other arguments that were discussed today because it just wasn't raised as an issue in this case. We specifically addressed the issue, which is whether habitation is broader in the Tennessee statute, the definition of habitation is broader than the generic definition, and then we also addressed modified categorical approach with the very narrow issue of whether the definition of habitation is divisible and in no other way because the public defender or the defense in their brief did state that and acknowledge that he was convicted, the defendant was convicted under the first subsection of the burglary, which is to unlawful enter a habitation with the intent to commit a theft, felony, or assault. And so that issue, Your Honor, is not before the court in this case. If all of the enhancements related to crime and violence were eliminated, it sure would simplify matters. It sure would. I agree, Your Honor. But to also get to Judge Barksdale's... just so much litigation. I agree, Your Honor. I think our office would agree as well. But to get to the alternative argument of the harmless error, should the court even get to that point, the government's position is that this case is distinguishable from Martinez-Romero in that I think one of the primary points in this case is that Judge Alvarez, when she was sentencing the defendant, she read the plea colloquy of his state conviction of the burglary of a dwelling. And she went through the whole thing where he judicially confessed and stipulated that he broke into a habitation, that they broke through a window, they stole property from within the house, and they left. I mean, so it was a traditional burglary of a dwelling. And so at the sentencing she said, I think I'm correct in applying this enhancement, but if I am wrong in applying this, I am looking this, and you indeed committed burglary of a dwelling. And these statements, when she's looking at, for purposes of a variance or purposes of a departure, you can look at the facts underlying the prior conduct, and she's saying you warrant the same sort of enhancement, the same sort of sentence that someone who actually would legally qualify  So she is indicating that she would impose the same sentence, pointing out specifically that she had read the state colloquy. So this is compelling proof that the court would have imposed a sentence outside the properly calculated sentencing guideline range for the same reasons that she provided at sentencing. In other words, this is what she intended and wanted him to receive. And under 201.2 comment note 7, it recognizes, for purposes of a departure, that the court, in looking at whether the defendant has qualified for a crime of violence enhancement, if he should not technically qualify or legally qualify for a 16-level enhancement and the next level down is the 8-level enhancement, that the court can look at the conduct in determining whether he should receive a higher level because it's not accounted for in 201.2 crime of violence. So certainly for a variance. Well, counsel, it seems that Martinez-Romero, whatever else it may stand for, does say that, regardless of statements such as Judge Alvarez made, if the sentence is, in fact, within the guideline, bottom end of the guideline, top end of the guideline, that is a suggestion that needs to be overcome, that this incorrect guideline, the suggestion is that the incorrect guideline affected the sentence and she was still relying on it despite these other statements. Isn't that a fair reading of Martinez-Romero? Yes, Your Honor. I do believe that Martinez-Romero does have aspects to the case, one of which is that the defendant is sentenced to the minimum guideline range, and that is indicative that the court arrived on erroneous information. And the government's position is that what takes this out of that analysis is that the court is looking at a specific behavior, saying this actually is a burglary of a dwelling, and for purposes of a variance, the court can look at that information to determine, you know what, because he committed exactly what a crime of violence would provide, I'm going to find that he should receive the same sentence that someone that did commit a crime of violence would receive. So I would impose the same sentence anyway. And that's what she said twice. You know, I think our jurisprudence, and I remember an en banc case we had in 1993 where we talked about on upward departures, for example, the district court is not required to go through this step by step. Okay, let's see. I think 15 to 20 is too low. Okay, 20 to 24, that's still too low. Okay, 25 to 30, that's still. But we said you don't have to go through that step by step procedure as long as what you do is reasonable. I can't remember the name of the case, but we decided that a long time ago. That's a friendly question. I know, Your Honor. Thank you, Your Honor. And yes, I agree with you. And here the judge says, I certainly sympathize, Mr. Castro, with the family situation that's going on now, but the court believes that under all the circumstances here. So who's to say the court wasn't trying to give the man a break by sentencing him just to 46 months, which was a low end of this assuming argument, though this was even an erroneous guideline, but still says this is the sentence I would impose if the sentencing guideline range was wrong because of your past criminal history. Your Honor, I agree in that. And also I think Rita, the Supreme Court case, says the same thing, not in the same context, but it says that the courts are not required to have a ritualistic recitation of certain facts in every case, that every case should be viewed by the specific facts and circumstances that are in the record. And in this record you do see that the district court put a lot of thought into this sentence. She did look at his extensive criminal history, the fact that he had been deported and returned again without being prosecuted the first time, the fact that he had a continuing criminal history that ended up in this burglary of a dwelling, which the court was very concerned about the burglary of a dwelling. And the district court stated that she was concerned about protecting the public, that he was a danger to the community, that it indicated that he needed deterrence. And she stated twice that she had reviewed and considered all of the 3553 factors in assessing the sentence. It was a very careful and considered decision. And this is not a case where you have all these different guideline calculations. I mean, it was a difference between a 16-level and an 8-level. So it's not like she would have had to go through all of these mental possibilities of what the sentence would be. I mean, it was clear as to what the sentence would have been had the 16-level enhancement had not been applied. It would then have fallen down to the 8-level. But I think what is very compelling in this case is that she looked at the burglary of a dwelling, what had occurred. And in the process of a variance or a departure, this court has found in Fuentes recently or within the last few years that the court can consider the facts in determining a departure or a variance. And that's what the court did. She said, I see. Look, this is exactly what you did. You broke into a house, you stole property, and you committed the traditional burglary of a dwelling. And I find that you deserve the same sentence that a person who committed a legal definition of burglary of a dwelling would get. And I would impose this even if I'm wrong. So I think that in this case it takes it out of those cases that say you can assume that the court considered incorrect information. Again, though, going back to what Judge Barksdale said. She is saying whatever the technicalities of the sentencing guideline may ultimately determine, to me, this is burglary, and you're going to get the same sentence. That's what she said. That's basically what she said. Yes, Your Honor. And again, going back to what Judge Barksdale just stated too, though, in any case it would be hard to make assumptions on any particular facts because each case has to be viewed by its own specific facts and circumstances. And in this case I would say that there's a strong case for harmless error because of the facts that I've just addressed. But again, not conceding that we don't prevail on the merits on our primary argument, which is that the Tennessee statute, with identical language to the Texas statute, is a generic burglary of a dwelling. This court has found that it is the categorical equivalent, and there's no reason to change that in this case. Okay, thank you very much, Ms. Hayden. Mr. Gallagher? To start with your question, Justice Jolly, I think I'm answering your question. I believe I have to concede on this record that Mr. Castro Alfonso was convicted under Section A1 of that 402, which would be enters a building with intent to commit a felony, theft, or assault, and not one of the other versions. And that's because the indictment tracks that language, and even post-mathis the jury instructions which are included in it. You're not supposed to look at the indictment, are you? I think under mathis we can, to determine whether or not something is an element for means, we can look at the indictment and jury instructions. And I think those, in this case, I think those documents suggest that whether someone was convicted under A1 of 402 are indeed elements. I don't think you can delve down further on that, which is why you can't go down past the word habitation. But I do think the jury instructions that I have in my brief on page 16 do show that to have convicted him, the jury would have had to have found that he entered a building, in this case a habitation, with intent to commit a particular one of these offenses. Counsel, let me ask you about Garcia Mendez. Your basic point seemed to be that it's a plain error case, doesn't make the holdings that it might. Let us say this court decides you were wrong. You're certainly right that it's a plain error case, but that it does make findings or holdings binding on us. Where does that leave your argument about this statute? Well, it's still, even if the court, it's so hard to tell in Garcia Mendez what the basis was. I think, as I said, the basis for that court's decision was, we held this particular Texas offense was a crime or violence 12 years ago. Therefore, on plain error you lose. I think, honestly, that's the court's reasoning in Garcia Mendez. We had argued... I've asked you to put that aside. I know, I'm sorry. But what I'm trying is... I've got that already. But past that, it's hard to understand the basis for the court's reasoning. It's hard to understand. It would be hard to look at Garcia Mendez. And while I said the court recited the defendant's argument that Texas burglary was overbroad for similar reasons to what we're arguing here, the court didn't evaluate whether or not we were correct. From looking at Garcia Mendez, for all I know, the panel thought we were wrong. The defense was wrong about the scope of Texas burglary. That's completely consistent with that case. And, moreover, it would be... To reach that decision on Garcia Mendez would mean that the statements of subsequent published decisions like Gomez-Guerra, Martinez-Garcia are wrong, which talk about entry into the building itself, into the dwelling itself, and not into other areas that might be protected by particular state statutes. So to put that much weight into Garcia Mendez would require this court to repudiate language from both subsequent published decisions in Gomez-Guerra and Martinez-Garcia. And, of course, I fully recognize a later panel can't overrule the first panel's decision, and Garcia Mendez was the first panel of these cases I'm talking about. But that's why, again, it makes the most sense to read that as a plain error case. Do those later cases refer to Garcia Mendez? At least one of them does, Your Honor, and right now, standing before you, I can't remember. And it doesn't... But is it cabinet? Does it block it off on the basis that you're arguing? It doesn't get into it. It cites it as a C also, and I believe that is Gomez-Guerra, Your Honor. So it merely cites it? Yes, it is cited in one of those subsequent published cases, Your Honor. Thanks. And as a... I'm just saying you leave that behind. You've got other things to talk about. Well, the only other thing I was going to say... So, anyway, my point on that is, again, I just simply don't think Garcia Mendez can bear the weight the government's putting on it. Neither its reasoning nor its essential holdings support that. And then, finally, I'll just end again with this case. The facts are not different from Martinez-Romero. There, the judge said three times I would impose the same sentence even if I'm wrong on your objection. That defendant had an awful criminal record. He had... The kidnapping involved a minor. There was aggravated stalking. There was other battery offenses. He... Mr. Castro-Alfonso has other things. But, again, it's hard to... But I think you agreed... You said, and, again, that there wasn't a recommendation in the Martinez-Romero PSR to consider an upward departure. I didn't say that, Your Honor. What I said was is I didn't see that in... I didn't see that fact one way or the other in the decision. So I simply do not know. Okay. I don't concede that. But it is clear the court... And, finally, the court there recognized the judge could impose an upward departure. There was all sorts of reasons for it. And if the court did, considering the right guidelines range and the right factors, it would likely be affirmed. But here, when the judge kept saying, it was considering the 3553A factors, it had one of them wrong. And that was the guidelines range. And it never considered the correct range. And, therefore, that... And my last word, if I may. Just finish my sentence, Your Honor. Just in that, and the court's clearly pegging the sentence to the guidelines range to show that the government can't meet its burden here any more than it could in Martinez-Romero. Thank you, Mr. Goddard. Thank you, Your Honor. Carl, the next case...